# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

INCOME ALLOCATION, LLC *an Indiana*
*Limited Liability Company*,

          Plaintiff,

v.

TRUCHOICE FINANCIAL GROUP, LLC
*a Minnesota Limited Liability Company*,

          Defendant.

Case No. 22-CV-343 (JWB/JFD)

**ORDER**

---

This case is before the Court on Plaintiff Income Allocation, LLC's ("Income Allocation") Renewed Motion for Leave to File a First Amended Complaint. (Dkt. No. 35.) The Court heard oral argument on December 15, 2022. (Hr'g Mins., Dkt. No. 47.) Paul Godfread, Esq. represented Income Allocation and Katherine Razavi, Esq. represented Defendant Truchoice Financial Group ("TruChoice"). (*Id.*)

The Court stayed discovery in this case on December 9, 2022 (Order, Dkt. No. 46; Order, Dkt. No. 54) because the sole member of Income Allocation, Mr. Gaylor, was hospitalized following a major medical event (Joint Mot. Stay Disc. 1, Dkt. No. 44). Mr. Gaylor's condition made it impossible for him to participate in discovery. (*Id.*). The stay expired on June 6, 2023. (Order, Dkt. No. 54.) In light of the stay's expiration, the Court issues this ruling on the pending motion. The Court grants in part and denies in part the Motion to Amend, as set forth below.

## I.      BACKGROUND[1]

TruChoice provides training and other services to financial professionals. (Pl.'s Renewed Mot. Amend Compl., Ex. 2 ("Proposed Am. Compl.") ¶ 11, Dkt. No. 35-2) Mr. Gaylor is a financial advisor and the creator of several wealth management products and services. (*Id.* ¶¶ 12–13.) Mr. Gaylor is also a published author, and he released a "web-based software and application" based on the principles in his book, which contained calculators that customers could use to estimate their retirement income or compare investment portfolios. (*Id.* ¶¶ 15–16.) He also produced a "whiteboard video" based on his book and an unspecified number of his other products. (*Id.* ¶ 21.) Mr. Gaylor registered a copyright for the book (the '427 copyright) in January 2016 but his company, Income Allocation, did not register the copyright for the software and app until September 2022 (the '532 copyright). (*Id.* ¶¶ 15, 17.) *Income Allocation*, U.S. Copyright Office, https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?Search_Arg=TX0008211427&Search_Code=REGS&PID=etDrIjJKiu_ctkH5wI3OJ9BALs8q&SEQ=20230608164957&CNT=25&HIST=1 (Jan. 14, 2016); *Computer Program for Income Allocation and Equivalent Portfolio Value*, U.S. Copyright Office, https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=1&ti=1,1&Search%5FArg=TX0009173532&Search%5FCode=RE

---

[1] Because the Court applies the standard for a motion to dismiss in evaluating whether the proposed amendment is futile, this background recites the facts as alleged by Income Allocation. *See Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013) (stating legal standard for evaluating a motion to dismiss).

GS&CNT=25&PID=GW2TNIBNCnzP2VImW_3CedLeyo8I&SEQ=20230601111014&S
ID=4 (Sept. 26, 2022, supplemented Nov. 28, 2022).

### A. The Mutual Termination Agreement

Mr. Gaylor founded Income Allocation, Tradewinds Financial Group, Inc.
("Tradewinds"), and 3-Mentors, Inc. (*Id.* ¶ 12.) The book, software, and app were the
subject of several license agreements between Mr. Gaylor, these entities, and GamePlan
Financial Marketing, LLC. (*Id.* ¶¶ 22–23.) Those agreements were assigned to TruChoice
and subsequently terminated in a "mutual termination agreement" ("MTA") executed in
2021 by Mr. Gaylor, Tradewinds, and Truchoice. (*Id.* ¶¶ 24, 26–27.) The MTA stated that
Tradewinds owned the trademarks "Income Allocation," "Equivalent Portfolio Value" and
"EPV." (*Id.* ¶ 28.) Mr. Gaylor owned all the rights in his book, the whiteboard video—a
derivative work of the book—and intellectual property he created outside the scope of the
agreements which the MTA was replacing (called "Background IP."). (*Id.* ¶ 27, 29–31. *But
see id.* ¶ 29 (claiming that the MTA stated that Tradewinds and Mr. Gaylor together owned
the "Background IP").) The MTA stated that TruChoice would stop using the "Background
IP" the day that the MTA was effective and would stop using the book and whiteboard video
by March 14, 2021. (*Id.* 33–34.) The MTA went into effect on January 13, 2021. (*Id.* ¶ 27.)
Later, Mr. Gaylor and Tradewinds assigned their rights under the MTA to Income
Allocation. (*Id.* ¶ 32.)

### B. The Infringement and Subsequent Litigation

After the licenses granted under the MTA expired, Income Allocation learned that
TruChoice was still using Mr. Gaylor's work. (*Id.* ¶¶ 34–39.) For example, it produced a

digital copy of the book and made it available to TruChoice customers. (*Id.* ¶ 36.) TruChoice also continued to use the "Background IP" and the whiteboard video. (*Id.* ¶ 34, 37.) In February 2022, Income Allocation sued TruChoice for breach of contract, copyright infringement, contributory copyright infringement, false designation of origin, trademark infringement, conversion, and violation of the Minnesota Deceptive Trade Practices Act (Minn. Stat. § 325D.44 (2022)). (*Id.* at ¶¶ 44–201.) The undersigned held a settlement conference in September 2022, but the parties were unable to reach a resolution, and discovery started in earnest. (Hr'g Mins., Dkt. No. 29; Decl. Katherine S. Razavi ¶ 4, Dkt. No. 41.)

On the afternoon of November 1, 2022—the last day for the parties to amend their pleadings—counsel for Income Allocation left a voicemail for counsel for TruChoice, notifying her that Income Allocation intended to file an amended complaint and asking if her client would object to amendments. (Razavi Decl. ¶ 5.) Counsel for TruChoice replied by email at 6:26 that evening, saying that without any notice of what the proposed amendments were, her client could not respond. (*Id.* ¶ 6.)[2] At 9:09 pm, Income Allocation then filed a motion to amend the complaint to include additional copyright infringement claims, federal and state trade secret misappropriation claims, and an unjust enrichment claim. (Pl.'s Mot. to Am. Compl., Dkt. No. 32; *Id.*, Ex. A ¶¶ 44–201.)

---

[2] Counsel for Income Allocation later explained that he did not provide a summary or copy of these proposed amendments because they were still being finalized when he called counsel for TruChoice. (*Id.* at 7.)

Income Allocation's filings did not comply with the District of Minnesota Local Rules or the Electronic Case Filing Procedure Guidelines, which are incorporated by reference into the Local Rules. D. Minn. LR 5.1; (Dkt. No. 34). Income Allocation did not file a memorandum of law, meet and confer statement, or proposed order.[3] *See* LR 7.1(b)(1)(A) (requiring the moving party to file and serve such documents simultaneously with their motion); (Pl.'s Mot.  Amend Compl., Dkt. No. 32 (including only a motion)). Income Allocation's notice of hearing was attached as an exhibit to the motion, and not as an independent filing, in violation of the Electronic Case Filing Guidelines ("ECF Guidelines"). United States District Court District of Minnesota, *Electronic Case Filing Procedures Guide: Civil Cases* 10 (May 16, 2023), https://www.mnd.uscourts.gov/sites/mnd/files/Civil-ECF-Procedures-Guide.pdf ("[A]ttorneys should file their motions in the following order <u>as separate docket entries</u> . . . ."); LR 5.1 ("Electronic filing and service are governed by . . . . the civil and criminal Electronic Case Filing Procedures Guides.).

The Court ordered Income Allocation to correct its errors, including its failure to meet and confer with opposing counsel and its failure to submit a separate memorandum of

---

[3] The Local Rules require counsel to file proposed orders on CM/ECF and email an editable copy of their orders to chambers. LR 7.1(b)(1)("[T]he moving party must file and serve the following documents simultaneously . . . proposed order (an editable copy of which must be emailed to chambers).") Counsel for Income Allocation emailed a proposed order to chambers, as required by LR 7.1(b)(1)(F) but did not file the order on CM/ECF. Counsel argues that the rule "does not expressly require . . . duplicative submission of a proposed order via both mail and ECF filing." (Pl.'s Reply Mem. 9.) In fact, that is exactly what the rules and the CM/ECF guidelines require.

law, before 5:00 pm on November 4. (*Id.*) On November 4, Counsel filed a renewed motion with several exhibits,[4] including a proposed order, meet and confer statement, memorandum of law, and notice of hearing. While the proposed amendments to the complaint were identical (*compare* Pl.'s Mot. Amend Compl., Ex. B, Dkt. No. 32-2 *with* Pl.'s Renewed Mot. Amend. Compl., Ex. 2, Dkt. No. 35-2) they were supported by a memorandum of law (Dkt. No. 38) that counsel did not file with the initial motion on November 1. TruChoice opposes the motion to amend the complaint as untimely and futile. (Def.'s Mem. Opp'n Mot. Amend Compl., Dkt. No. 40.)

## II.    LEGAL STANDARD

Leave to amend a pleading after the time to amend of right has expired is governed by Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." This is a capacious standard, but it is not a boundless one. Courts may deny leave to amend for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."

---

[4] Counsel again failed to file the documents as separate document entries but corrected this error on November 9. (Dkt. Nos. 36–39.)

*Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008) (citing *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)).

A proposed amendment to a complaint is futile if "the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). Rule 12(b)(6) requires dismissal when a complaint fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff need not plead "detailed factual allegations," but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. For a claim to be facially plausible, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In applying this standard, the Court accepts the factual allegations as true and views them in the light most favorable to the plaintiff. *Healy v. Fox,* 46 F.4th 739, 744 (8th Cir. 2022).

If a party attempts to amend or supplement a complaint after the deadline to do so in a court's scheduling order has passed, it must show "good cause" to amend the scheduling order under rule 16(b)(4). *Schnuck Markets, Inc. v. First Data Merch. Servs. Corp.*, 852 F.3d 732, 740 (8th Cir. 2017) (citing *Sherman*, 532 F.3d at 716). "[T]he primary measure" of good cause is "the movant's diligence in attempting to comply with the scheduling order." *Id.* But courts may consider other factors if they wish. *Marks v. Bauer*, No. 20-CV-1913 (ADM/JFD), 2021 WL 6050309 at *2 (D. Minn. Dec. 21, 2021) (noting that Eighth Circuit precedent does not require diligence for a finding of good cause and that courts may

consider other factors such as prejudice to the non-movant, justifications for the amendment, the amendment's importance, and whether the non-moving party's actions caused the need to amend). The Court must first find good cause to modify the scheduling order before considering whether an amended complaint should be allowed. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 614 (D. Minn. 2019) ("Rule 16(b)(4) must be addressed first . . . . Rule 16 opens the door to Rule 15.")

## III.   ANALYSIS

TruChoice argues that Income Allocation's motion to amend the complaint was untimely and futile. The Court respectfully disagrees as to timeliness and agrees, in part, as to futility.

### A.  Income Allocation's Motion to Amend Was Timely Filed.

TruChoice alleges that when Income Allocation filed "a new motion and a new memorandum, with new facts and new arguments" on November 4, in response to the Court's November 2 order, it should have shown good cause for its late filing. (Def.'s Mem. Opp'n at 7–8.) TruChoice urges the Court to deny the motion as untimely because Income Allocation failed to show good cause to move the deadline. (*Id.* at 16–18 (citing D. Minn. LR 1.3).) It insists that such an outcome would not be "harsh or unfair" because Income Allocation "waited until the last minute, rushed to draft and file a motion, skipped the meet and confer requirement, and failed to comply with the Local Rules." (*Id.* at 20.) Income Allocation responds that because it timely filed its original motion on November 1, it met the deadline in the scheduling order and it need not show good cause to amend that deadline.

(Pl.'s Mem. Supp. 1, 7–8, Dkt. No. 35-6.) It also argues that its original filing followed the Local Rules, because it was not possible to file a meet and confer statement simultaneously with its motion because opposing counsel was not available to meet and confer—on the afternoon of the last day to amend the complaint. (Pl.'s Reply Mem. Supp. 9, Dkt. No. 43, (citing LR 7.1(a)(1)(A)).)

The Court rejects Income Allocation's claims and accepts TruChoice's assertion that the Local Rules were violated because Income Allocation was in a last-minute rush to get its motion to amend filed. There is no doubt that Income Allocation's November 1 filings violated Local Rule 7.1 and the ECF Guidelines. This Court had the discretion to impose "appropriate sanctions" for these violations under Local Rule 1.3. *R.A.D. Servs. LLC v. State Farm Fire & Cas. Co.*, 60 F.4th 408, 412 (8th Cir. 2023) ("The district court has considerable discretion in applying its local rules." (quoting *Buffets, Inc. v. Leischow*, 732 F.3d 889, 895 (8th Cir. 2013))). It chose instead to give Income Allocation a short extension of time to file its moving papers in compliance with the Local Rules. (Def.'s Mem. Opp'n 17.) The Order stated:

> The Court has reviewed the filings in support of Plaintiff's Motion to Amend Complaint [Dkt. No.] 32 and finds that the Motion does not comply with D. Minn. LR 7.1 in several respects. Therefore, by 5:00 p.m. on 11/04/2022, counsel shall file a separate meet and confer statement, separate memorandum of law, and a proposed order (the Court has received the copy sent to chambers but no copy has been filed), or the Court will deny the motion without prejudice for failure to follow D. Minn. LR 7.1(a) and (b)(1). If the Defendants do not oppose the motion, the parties may proceed by stipulation.

The Court's order did not limit Income Allocation to re-filing its inadequate moving papers. The Court required it to comply with Local Rule 7.1, which necessarily demanded that

Income Allocation draft a memorandum to support its proposed amendments. Having issued this Order, the Court will not penalize Income Allocation (by denying the re-filed motion and supporting documents as untimely) for complying with it.

Counsel for Income Allocation reported that he had no document to share with opposing counsel before leaving the voicemail at 2:40 pm on the day the amendments were due, and that his tardiness was due in part to his client's vacation. (*Id.*) This entire situation could have been avoided had Income Allocation's counsel started work on the amendments reasonably promptly after the "new developments" on which the amendments are based became known, in September 2022. (*See* Pl.'s Reply Mem. 10 (arguing that amendments are necessary due to "new developments" unknown until September 2022).) Waiting until the afternoon of the day of a deadline to attempt to contact opposing counsel, then claim that a meet-and-confer was not possible due to opposing counsel's unavailability does violence to the impossibility exception to LR 7.1's meet and confer requirement. *See* LR 7.1(a)(1)(A). This situation is compounded by Income Allocation's counsel not having a draft amended complaint that TruChoice's counsel could review until after 9:00 pm on the day the amended complaint was due.

The obligation to meet and confer before filing motions is a serious obligation. Not only is meeting and conferring a professional courtesy, it is also a rule of the Court, and one with an important purpose. Meeting and conferring is "intended to lead to a meaningful, pre-motion-filing exchange of views between the parties to a lawsuit, and, if possible, to a full or partial resolution of the matter(s) that are the subject of a contemplated motion." *Marks v. Bauer*, No. 20-CV-1913 (ADM/JFD), 2021 WL 6050309, at *3 (D. Minn. Dec.

21, 2021) (quoting *Magistrate Judge John F. Docherty's Practice Pointers and Preferences*, https://www.mnd.uscourts.gov/judges-practice-pointers, at 3 (last visited Feb. 8, 2023)). The habit of meeting and conferring streamlines motion practice, which reduces the burden on the parties, counsel, and the courts. Going forward, the Court expects that the parties will timely meet and confer in good faith, as required by the rules of the Court.

**B.  Some, but Not All, of Income Allocation's Proposed Amended Claims are Futile.**

A claim is futile if it fails "to state a claim to relief that is plausible on its face." *See Cornelia I. Crowell GST Tr.*, 519 F.3d at 782; *Bell Atl. Corp.*, 550 U.S. at 570. TruChoice argues that none of the claims asserted in the amended complaint—six new copyright infringement claims, two new trade secret misappropriation claims, and an unjust enrichment claim—are plausible. (Def.'s Mem. Opp'n 8.) The Court finds that Income Allocation has plausibly alleged that TruChoice copied the book by making and distributing an unauthorized e-book version, and by distributing the whiteboard video, but it has not adequately pleaded the other copyright claims, trade secret misappropriation claims, or the unjust enrichment claim.

> ### i.  *Income Allocation's Copyright Claims are Futile Except as they Relate to Unauthorized Copying of the E-Book and Whiteboard Video.*

The Copyright Act grants "the author of an original work a bundle of exclusive rights" in that work. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1273 (2023) (internal quotations omitted) (citing U.S. Const. art. 1, § 8, cl. 8). One of the exclusive rights is the right to make a derivative work, which is "a work based upon one or more preexisting works." 17 U.S.C. § 106(2) (granting the right), § 101 (defining

derivative work); *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 (8th Cir. 2004). The preexisting work is "recast, transformed, or adapted" in the derivative work that results. 17 U.S.C. § 101. A derivative work can infringe a copyright if it incorporates parts of a copyrighted work and is substantially similar to the copyrighted work. *Bar-Meir v. N. Am. Die Cast Ass'n*, 176 F. Supp. 2d 944, 949 (D. Minn. 2001), *aff'd*, 53 F. App'x 396 (8th Cir. 2002); *see also* 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 3.01 (2022) ("A work is not derivative unless it has substantially copied from a prior work"); *Mulcahy*, 386 F.3d at 853 (citing Nimmer on Copyright). Thus, if a person makes a work based on a copyrighted work that is substantially similar to the original, they have made a derivative work. If the person does so without permission from the copyright owner of the original work, they have infringed on that owner's copyright. *Id.* at 852 (citing 17 U.S.C. § 501(a)).

Both parties agree that to adequately plead copyright infringement, Income Allocation must allege "(1) ownership of a valid copyright and (2) copying of the constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1142 (8th Cir. 1989) (Def.'s Mem. Opp'n 23–24; Pl.'s Reply Mem. 7.) Income Allocation's proposed amended complaint alleges that TruChoice violated both the '427 copyright and the '532 copyright by using software made from the Background IP (intellectual property not covered by the agreements that the MTA terminated), by copying the book into an e-book, by generating reports for customers using the software made from the Background IP, by showing the

whiteboard video, and by distributing these derivative works for others to access.  (Proposed Am. Compl. ¶¶ 54–106.) TruChoice argues that the amended copyright claims fail to plead either ownership of a valid copyright or copying of a copyrighted work and urges the Court to reject the amendments as futile. (Def.'s Mem. Opp'n 24.)

### a. Income Allocation Has Plausibly Alleged Ownership of a Valid Copyright for the '427 Copyright, but not the '532 Copyright.

A certificate of copyright registration "made before or within five years after first publication of the work" establishes a rebuttable presumption of valid ownership of a copyright. 17 U.S.C. § 410(c); *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1042 (8th Cir. 2003). TruChoice argues that because Income Allocation did not receive the certificate of registration for the '532 copyright until over eight years after the computer program was first published, it is not entitled to the statutory presumption of validity. (Def.'s Mem. Opp'n 25.)[5] TruChoice is correct. In reviewing the copyright registration[6] for the '532 copyright, the Court found that the reported date of publication

---

[5] Income Allocation also alleged that the registration was facially invalid because it claimed that Income Allocation LLC created the computer program in 2014, which would have been impossible because the LLC was not organized until 2021. (Def.'s Mem. Opp'n 27.) The registration has since been supplemented to state that eToolsHQ created the computer program and transferred the copyright to Income Allocation by written agreement. (Declaration of Michael T. Fluhler ¶ 19, Dkt. No. 43-1.) Both the original copyright registration and its supplement were filed more than five years after the first-publication date of April 30, 2014, and therefore this subsidiary dispute over facial invalidity does not change the Court's analysis.

[6] The Court may consider public records in determining whether a claim is futile because it applies the same standard as on a motion to dismiss, where courts may take judicial notice of public records. *Stahl v. U.S. Dep't Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records and may thus consider them on a *(footnote continued on next page)*

was April 30, 2014, meaning that the presumption of validity would only apply if the '532 copyright was registered on or before April 30, 2019. But the '532 copyright was registered on September 26, 2022, more than seven months after this litigation started, and more than three years after the five-year window for the presumption of validity closed. *Computer Program for Income Allocation and Equivalent Portfolio Value*, U.S. Copyright Office, https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=1&ti=1,1&Search%5FArg=TX000 9173532&Search%5FCode=REGS&CNT=25&PID=GW2TNIBNCnzP2VImW_3CedLe yo8I&SEQ=20230601111014&SID=4 (Sept. 26, 2022, supplemented Nov. 28, 2022); (Proposed Am. Compl. ¶ 17). Thus, the '532 copyright is not entitled to a presumption of validity, but that does not mean it is automatically invalid. *Thimbleberries, Inc. v. C & F Enters., Inc.*, 142 F. Supp. 2d 1132, 1137 (D. Minn. 2001). The court must exercise its "discretion to decide what evidentiary weight to accord the registration certificate in judging whether plaintiff has established the requisite originality and protectability of its work." *Id.*

Income Allocation alleges that the '532 registration covers the "Background Software," which it defines as the "web-based software and application . . . based on income planning techniques" from the book including calculators (the Income Allocation Calculator and the Equivalent Portfolio Value (EPV) Calculator) and individualized reports for customers. (Proposed Am. Compl. ¶¶ 16–18). The proposed amended complaint alleges

---

motion to dismiss."); *Amen El v. Schnell*, No. 20-CV-1327 (DSD/ECW), 2022 WL 1110981, at *7 (D. Minn. Jan. 31, 2022), *R&R adopted*, 2022 WL 766402 (D. Minn. Mar. 14, 2022), *aff'd*, No. 22-2115, 2022 WL 17228817 (8th Cir. July 29, 2022).

neither that the software was original nor that it was protectable under U.S. Copyright law. Without such facts, and without the presumption of validity from a timely copyright registration, the Court finds that Income Allocation's '523 copyright "case collapses on its own merit." 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright § 12.11 (2022). The '427 copyright, however, is presumptively valid and TruChoice has not attempted to rebut that presumption, so it may be the basis for an infringement claim, if Income Allocation adequately alleges copying.

### b. Income Allocation Has Plausibly Alleged Copying in the E-book and the Whiteboard Video.

The second element of copyright infringement is copying. A party can prove copying by "demonstration of access (by the alleged infringer) and substantial similarity (between the works at issue)." *Moore v. Columbia Pictures Indus., Inc.*, 972 F.2d 939, 941–42 (8th Cir. 1992). The Eighth Circuit recently described the test for substantial similarity:

> First, there must be similarity of ideas, which must be "evaluated extrinsically, focusing on [the] objective similarities . . . of the works." *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). Second, if the ideas are similar, they must be similarly expressed, meaning that an "ordinary, reasonable person" would think that "the total concept and feel of the [designs] in question are substantially similar." *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120–21 (8th Cir. 1987) (referring to this as "the intrinsic test"). Without similarity in ideas and expression, there is no infringement. *See id.* at 120.

*Designworks Homes, Inc. v. Thomson Sailors Homes, L.L.C.*, 9 F.4th 961, 963–64 (8th Cir. 2021) (alterations and omissions in original).

A person who is making a work that is derivative of a copyrighted work is substantially copying from, and making a work substantially similar to, the original, so

courts apply the substantial similarity test when determining whether producing a derivative work has infringed the rights of the original copyright holder. *See My Pillow, Inc. v. Ontel Prod. Corp.*, No. 19-CV-903 (JNE/HB), 2020 WL 1977287, at *8 (D. Minn. Apr. 3, 2020), *R&R adopted*, No. 19-CV-0903 (JNE/HB), 2020 WL 1976478 (D. Minn. Apr. 24, 2020) (applying substantial similarity test). TruChoice argues that Income Allocation has failed to plausibly allege that TruChoice used works derivative of the book protected by the '427 copyright because it has not shown in what ways the derivative software, e-book, reports, or the whiteboard video are substantially similar to the book. (Def.'s Mem. Opp'n 28.)

Count II of the proposed amended complaint alleges that the '427 copyright gives it exclusive rights to produce works derived from the book. (Proposed Am. Compl. ¶ 56.) It claims that TruChoice is using "Derivative Software," which it defines as the "Background IP and derivative works thereof." (*Id.* at ¶ 34.) Income Allocation then defines "Background IP" as "intellectual property originating outside the term of or created independently of the Tradewinds Agreements." (*Id.* at ¶ 29.) This definitional tangle makes it difficult to tell precisely what Income Allocation is claiming, but upon close review it appears most likely to the Court that Income Allocation believes that TruChoice is using software that is a derivative work of (i.e. substantially copied from) the book in violation of the '427 copyright. TruChoice correctly points out that this claim is bereft of any factual assertions that would make it plausible. There is no discussion of the software in the proposed amended complaint, nor what portions of the book were copied to make it. Further, because the definition of "Derivative Software" encompasses the definition of "Background IP," which itself is a term so broad that it could include anything from source

16

code to presentations, the Court cannot determine what it is that the software does. This confusion poses an insurmountable challenge to finding Income Allocation's claims plausible. The Court finds that Income Allocation's amended count two is implausible and thus futile.

In Count III of the proposed amended complaint, Income Allocation again alleges that it has the exclusive right to produce works derivative of the 2015 book (Proposed Am. Compl. ¶¶ 15, 68.) It goes on to allege that the e-book is a derivative work of the print book because it is "adapted from Plaintiff's copyrighted Book." (*Id.* ¶ 71.) It claims that TruChoice had access to the book as early as 2016 and produced an exact copy of the entire book after the deadline the MTA set for TruChoice to stop using Mr. Gaylor's "Background IP." (*Id.* ¶¶ 36, 72–75.) The term "Background IP" was defined in the original complaint as including the '427 copyright covering the book and the definition has not changed in the proposed amended complaint. (*Compare* Compl. ¶ 27, Dkt. No. 1 *with* Proposed Am. Compl. ¶ 29.) In sum, Income Allocation alleges that TruChoice made copies of the book after it agreed not to use it. (Proposed Am. Compl. ¶¶ 15, 28, 31–33, 51–56.) TruChoice does not challenge this claim as futile, only the part of Count III that alleges infringement of the '523 copyright. The Court has already found that the '523 copyright is not presumptively valid, that Income Allocation has to plead the validity of the '523 copyright absent that presumption, and that Income Allocation did not do so. (Def.'s Mem. Opp'n 26.) Thus, Count III of the proposed amended complaint is not futile, but only to the extent it relies on the '427 copyright; Income Allocation has alleged a presumptively valid copyright, alleged that TruChoice had access to the book, and alleged that TruChoice

17

copied the book in its entirety without a license. The part of the claim in Count III that is premised on the '427 copyright would survive a 12(b)(6) motion and will therefore proceed.

In contrast, Count IV of the proposed amended complaint argues that TruChoice's use of "reports" violates the '427 copyright because each report "is a derivative work adapted from Plaintiff's copyrighted Book." (Proposed Am. Compl. ¶ 84.) As mentioned previously, the "Background Software" on which the '532 copyright is based generates "reports" for individual customers. (*Id.* ¶¶ 17–18.) TruChoice argues that Count IV fails to allege a violation of the '427 copyright because it does not allege how the report is a derivative work of (i.e. "substantially copied" from) Mr. Gaylor's book. (Def.'s Mem. Opp'n 26.) It is possible that reports generated by software *could* be derivative works of a book, but the Court's role is not to imagine possible scenarios where a claim is conceivable. Under *Iqbal* and *Twombly*, it must determine whether the claim is plausible as pleaded. The proposed amended complaint gives no facts describing the relationship between the report and the software, making it impossible to tell if the former is substantially copied from the latter. Thus, Count IV of the proposed amended complaint is futile.

Count V of the proposed amended complaint alleges that TruChoice continued to use the whiteboard video after the date the parties agreed that TruChoice would no longer use it. (Proposed Am. Compl. ¶¶ 99–100.) The complaint describes the whiteboard video as a "video . . . based on" Mr. Gaylor's book. (*Id.* ¶ 15 (defining the book); ¶ 21 (defining the whiteboard video).) Count V alleges that the '427 copyright gives Income Allocation exclusive rights to produce works derivative of the book, but it does not allege that the

whiteboard video is such a derivative work; instead, it says that the "Derivative Software" is a derivative work of the book. (*Id.* at ¶¶ 95, 97.) TruChoice argues that Income Allocation's failure to explicitly state that the video is derived from the book makes the claim unintelligible. (Def.'s Mem. Opp'n 33.) But Income Allocation does explicitly state in a later paragraph that the "Whiteboard Video . . . is a derivative work adapted from Plaintiff's copyrighted Book." (Proposed Am. Compl. ¶ 110.) More importantly, it alleges that the MTA memorialized this understanding between the parties. (*Id.* ¶ 31.)   This evidence suggests that at one time both parties agreed that the whiteboard video was substantially copied from the book, which makes the claim for copyright infringement plausible. Because the amended complaint plausibly alleges the existence of a valid copyright for the book, that the Whiteboard is a derivative work of that book, and that TruChoice had access to the video and displayed it without a license, it has plausibly pleaded a claim of copyright infringement.

Counts VI and VII allege that by distributing the "Derivative Software, Report, e-Book, and Whiteboard Video," to customers in its network, TruChoice infringed Income Allocation's exclusive right to distribute works derived from the book and aided TruChoice network customers in infringing on the '427 copyright.  (*Id.* ¶¶ 34, 110, 121, 123, 128.) But for the reasons explained above, Income Allocation has not plausibly pleaded that the derivative software or reports are in fact derivative works at all. Therefore, Count VI and Count VII only state a plausible claim for infringement for unlicensed distribution of the e-book and whiteboard video. To summarize, the Court finds that Income Allocation has plausibly alleged that TruChoice infringed on the '427 copyright by making the

unauthorized e-book (Count III), showing the whiteboard video (Count V), distributing both works (Count IV), and thus helping others to access them (Count VII). The rest of the copyright claims are not plausibly alleged and are thus futile.[7]

### ii.  *Misappropriation of Trade Secret Claims*

Income Allocation's proposed amended complaint adds two claims for trade secret misappropriation: one claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count X), and one claim under the Minnesota Uniform Trade Secret Act, Minn. Stat. § 325C (Count XI). (Proposed Am. Compl. ¶¶ 148–77.) Following Eighth Circuit precedent, the Court analyzes the two statutes together. *See MPAY Inc.*, 970 F.3d at 1016–17 n.1 (8th Cir. 2020) (citing *Cambria Co. v. Schumann*, No. 19-CV-3145 (NEB/TNL), 2020 WL 373599, at *3 (D. Minn. Jan. 23, 2020)); *see also Mgmt. Registry, Inc. v. A.W. Cos., Inc.,* No. 17-CV-5009 (JRT/DTS), 2022 WL 4706702, at *11 n.6 (D. Minn. Sept. 30, 2022). To prevail under both statutes, a plaintiff "must show, among other things, the existence of a protectable trade secret and misappropriation of that trade secret." *MPAY Inc.*, 970 F.3d at 1016. Plaintiffs alleging a trade secret must show that (1) the secret had "independent economic value due to its secrecy," (2) was "not readily ascertainable by others," and (3) the plaintiff "took efforts to maintain its secrecy." *Protégé Biomedical, LLC v. Z-Medica,*

---

[7] TruChoice also argues that Income Allocation's copyright claims fail to the extent they allege that TruChoice infringed Income Allocation's copyright by using the EPV calculator because, on TruChoice's reading, the express terms of the MTA prove that EPV Calculator is theirs. (Def.'s Mem. Opp'n 34–36.) The Court does not read the surviving claims, regarding the e-book and whiteboard video, as including the EPV calculator, so it will not address this argument.

*LLC*, 394 F. Supp. 3d 924, 938–39 (D. Minn. 2019) (quoting *Hot Stuff Foods, LLC v. Dornbach*, 726 F. Supp. 2d 1038, 1044 (D. Minn. 2010)). A plaintiff need not disclose the trade secret, but the complaint must allege enough facts that the court can "infer more than a mere possibility of misconduct." *Id.* (quoting *TE Connectivity Nets., Inc. v. All Sys. Broadband, Inc.,* No. 13-CV-1356 (ADM/FLN), 2013 WL 6827348 (D. Minn. Dec. 26, 2013)). Conclusory statements will not suffice. *Id.* A plaintiff can allege misappropriation of a trade secret in a variety of ways, depending on the facts of the case. *See* 18 U.S.C. § 1839(5); Minn. Stat. § 325C.01 subd. 3 (2022). For example, a plaintiff could allege that a person acquired the trade secret knowing that it was obtained by a breach of fiduciary duty. 18 U.S.C. § 1839(5)(A); Minn. Stat. § 325C.01 subd. 2, subd. 3(i) (2022). TruChoice argues that Income Allocation failed to plead either the existence of a trade secret or any kind of misappropriation. (Def.'s Mem. Opp'n. 32–36.) TruChoice is correct.

Income Allocation defines the trade secrets at issue as "Background IP including the Background Software and trade secrets such as its source code and other unpublished data." (Proposed Am. Compl. ¶ 150.) Background IP is in turn defined as "intellectual property originating outside the term of or created independently of the Tradewinds Agreements," which includes "the Copyright, Trademarks, presentations, training materials, written works, videos, digital media, online materials, software, computer programs, source code, calculators, and associated copyrights, trademark rights, and publicity rights." (*Id.* at ¶ 29.) It defines Background Software as "a web-based software and application . . . based on income planning techniques from the Book . . . and having calculators for determining retirement income . . . and providing portfolio comparisons

. . . ." (*Id.* at ¶ 16.) TruChoice argues these nested definitions cast too wide a net and fail to give it notice as to what trade secrets it is accused of misappropriating. (Def.'s Mem. Opp'n Amend Compl. 33–34.) This is true; Income Allocation is alleging that the trade secrets could be any of the following: source code, unpublished data, the '427 copyright, trademarks, presentations, training materials, writings, videos, digital media, online materials, software, computer programs, web applications, calculators, and publicity rights. (Proposed Am. Compl. ¶¶ 16, 29, 150.) After defining the "trade secrets" this way, Income Allocation alleges, in conclusory fashion, that the "trade secrets" are not generally known, derive value from not being generally known, and were the subject of reasonable efforts to maintain their secrecy. (*Id.* ¶¶ 154–57.) But this is demonstrably wrong because, as TruChoice points out, publicity rights, copyrights, and trademarks are all exposed to the public. (Def.'s Mem. Opp'n 40–41.) Even setting aside this problem, Income Allocation has not pleaded any more than "a formulaic recitation of the elements" establishing a trade secret, which is insufficient to plausibly plead a claim for trade secret misappropriation exists. *Twombly*, 550 U.S. at 555. Counts X and XI are futile.

### iii.   *Unjust Enrichment Claim*

Count XIV of the proposed amended complaint alleges a claim for unjust enrichment under Minnesota law. (Proposed Am. Compl. ¶¶ 195–201.) "Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Herlache v. Rucks*, No. A21-1427, 2023 WL 3486679, at *4 (Minn. May 17, 2023) (quoting *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012)). To prove unjust enrichment, a plaintiff

must show that the defendant enriched him or herself "illegally or unlawfully" *Id.* (quoting *First Nat'l Bank of St. Paul v. Ramier*, 311 N.W.2d 502, 504 (Minn. 1981)). Here, Income Allocation alleges that TruChoice benefitted from "its unauthorized copying, use, and distribution of the Derivative Software, Reports, e-Book, and Whiteboard Video" by selling "financial products in connection with" those works. (Proposed Am. Compl. ¶¶ 196–97.) The unjust enrichment count also incorporates all the preceding paragraphs in the complaint by reference, including Income Allocation's allegations that TruChoice breached the MTA. (*Id.* ¶¶ 27–41.) TruChoice argues that Income Allocation's unjust enrichment claim is preempted by the Copyright Act and, to the extent the claim is based on Income Allocation's alleged breach of the MTA, it fails because in Minnesota, a written agreement bars a party from recovering for unjust enrichment. (Def.'s Mem. Opp'n 42–44.) TruChoice is correct.

The Copyright Act preempts state law claims when the work that is the subject of the state claim is copyrighted and the right that the state claim vindicates is the same as the right granted under the Act. *Nat'l Car Rental Sys., Inc. v. Comput. Assocs. Int'l, Inc*., 991 F.2d 426, 428 (8th Cir. 1993). If a party must prove an "extra element" beyond (or instead of) the elements required to establish copyright infringement, then the cause of action is not preempted. *Id.* Put another way, if copyright infringement forms the basis of a state law unjust enrichment claim, that claim is preempted by the Copyright Act. *Britware Consulting, Inc. v. Con-Tech Mfg., Inc.*, 528 F. Supp. 3d 1031, 1037–38 (D. Minn. 2021) ("This Court joins the majority of courts that have addressed the issue and concludes that state-law unjust-enrichment claims are preempted by the Copyright Act.")

Income Allocation argues that *Britware* is inapposite because that case did not involve a breach of contract claim. (Pl.'s Reply Mem. 8–9.) The basis of Income Allocation's unjust enrichment claim is not only TruChoice's copyright infringement but also its breach of the MTA so, according to Income Allocation, the unjust enrichment claim is not preempted by the Copyright Act. (*Id.*); *see Britware*, 528 F. Supp. 3d at 1038 ("*Britware*'s unjust-enrichment claim rests solely on an alleged violation of its rights protected by the Copyright Act.") It is true that if a contract "creates a right not existing under copyright law—a right based upon a party's contractual promise—and the plaintiff is suing to protect that contractual right, then the claim is not preempted." *Issaenko v. Univ. of Minn.*, 57 F. Supp. 3d 985, 1028 (D. Minn. 2014). But alleging breach of contract in addition to copyright infringement does not automatically prevent preemption of unjust enrichment claims. Income Allocation argues that TruChoice wrongfully benefitted from using Income Allocation's copyrighted works after the license granted by the MTA expired. (*See* Proposed Am. Compl. ¶¶ 44–53.) Because the right to use a copyrighted work is granted by the Copyright Act, there could be no unjust enrichment claim without the Copyright Act. The unjust enrichment claim is within the scope of the Copyright Act, is preempted, and is therefore futile.  17 U.S.C. § 106 (outlining the exclusive rights of a copyright holder); 17 U.S.C. § 301 (preempting state common law actions to vindicate "equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright").

Even if the Court found that the MTA granted rights beyond the scope of the Copyright Act—which it does not— it would still find the claim to be futile because under

Minnesota law, "[u]njust enrichment does not apply when there is an enforceable contract." *Gelschus v. Hogen,* 47 F.4th 679, 690 (8th Cir. 2022) (internal quotations omitted); *Woodbury Lodging LLC v. Integrity Mut. Ins. Co.*, 597 F. Supp. 3d 1323, 1334 (D. Minn. 2022); *CH Bus Sales, Inc. v. Geiger*, No. 18-CV-2444 (SRN/KMM), 2019 WL 1282110, at *12 (D. Minn. Mar. 20, 2019). The MTA governed the parties' use of the copyrighted works, and any breach of that contract should be addressed as a breach of contract claim, which Income Allocation has advanced. *Cleveland v. Whirlpool Corp.*, 550 F. Supp. 3d 660, 671 (D. Minn. 2021) (noting that "[a]n equitable claim does not lie when an adequate legal remedy exists," even as an argument in the alternative); *HomeStar Prop. Sols., LLC v. Safeguard Properties, LLC*, 370 F. Supp. 3d 1020, 1030 (D. Minn. 2019) (same). Thus, the unjust enrichment claim is futile.

## IV.    CONCLUSION

Income Allocation argues that it could cure any deficiencies in pleading its copyright claims, trade secret misappropriation claims, and unjust enrichment claim by yet another amendment. (Pl.'s Reply Mem. 11–12.) In effect, Income Allocation resists TruChoice's argument that its current proposed amendments are futile by saying that a future amendment can address any problems. The Court is unpersuaded; any future amendments to these proposed amendments would require a modification of the scheduling order to allow for late amendments because the deadline to amend has come and gone. If facts existed in September 2022 to plead a plausible case, diligence required Income Allocation to include them in the instant amendment. Its failure to do so will not form the basis of a successful motion to amend the scheduling order, since amending the scheduling order requires a

finding of good cause, the primary measure of which is diligence. *Schnuck Markets, Inc.*,

852 F.3d 740. Of the new counts advanced in this amendment, only the copyright

infringement claims based on the e-book and whiteboard video may proceed.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED** that:

1. Income Allocation's Motion to Amend the Complaint (Dkt. No. 35) is **GRANTED IN PART AND DENIED IN PART.**
2. Income Allocation's motion to amend its complaint to include Amended Counts III, V, VI, and VII, alleging copyright infringement, unauthorized distribution, and contributory copyright infringement as to the e-book and whiteboard video is **GRANTED**.
3. Income Allocation's motion to amend its complaint to include Amended Counts II, IV, X, XI, and XIV is futile and the Court thus **DENIES** leave to amend the complaint as to those claims.
4. Income Allocation will file its amended complaint on or before **June 16, 2023**.
5. The stay of this case ended on June 6, 2023 and a new scheduling order is forthcoming. At the Court's request, the parties previously submitted letters detailing their positions on how discovery should proceed in this case, given Mr. Gaylor's situation. (Dkt. Nos. 59–60.) The Court finds that Mr. Gaylor's full participation is necessary for this case to proceed because he is the sole member and employee of the plaintiff LLC. (Pl.'s Letter 2, Dkt. No. 59; Def.'s Letter 1, Dkt. No. 60.) His daughter is not an acceptable 30(b)(6) representative, for the reasons TruChoice outlined in its letter, particularly her lack of familiarity with Income Allocation's business (Dkt. No. 60).

Date: June 9, 2023

*s/ John F. Docherty*

JOHN F. DOCHERTY
United States Magistrate Judge